UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRIS BOLDUC, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| NORWOOD PUBLIC SCHOOLS, ) | |
| ) | Civil Action No. 11-11915-DJC |
| Defendant/Third Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| JENNIFER R. GAVIN, ) | |
| ) | |
| Third Party Defendant. ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                         March 29, 2013

**I.     Introduction**

Plaintiff Norwood Public Schools ("Norwood") has brought a third party complaint against Jennifer R. Gavin ("Gavin"), an attorney who represented Chris and Jennifer Bolduc ("the Bolducs") in a hearing ("Hearing") before the Bureau of Special Education Appeals ("BSEA"). D. 8 ¶ 1. Norwood seeks fees and costs from Gavin individually, asserting (1) that Norwood was the prevailing party at the Hearing; (2) that Gavin continued to litigate after the litigation had clearly become frivolous, unreasonable or without foundation; and (3) that Gavin continued to litigate in a manner designed to harass and unnecessarily delay and increase the cost of litigation. D. 8 ¶¶ 22-25. Gavin has now moved to dismiss the third party complaint pursuant to Fed. R. Civ. P. 12(b)(6). D. 13. For the reasons given in this memorandum, Gavin's motion is GRANTED.

1

**II.     Factual Background**

The Court accepts the well pled factual allegations from Norwood's third party complaint against Gavin as true for the purposes of resolving this complaint, Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 12 (1st Cir. 2011), and "draw[s] all reasonable inferences in favor of the plaintiff[]." Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009). Norwood is a public school district in Massachusetts and is a "local education agency" for the purposes of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. ¶ 3.[1]  The Bolducs reside in Norwood, Massachusetts and have a six-year old son ("A.B.")[2] who is "multiply-disabled" and has been diagnosed with autism.  ¶¶ 4, 7.   Gavin is an attorney licensed to practice in Massachusetts.  ¶ 5.

Norwood proposed an Individualized Education Plan ("IEP") for A.B. for the period from November 8, 2010 to November 8, 2011 that placed the child at Norwood's Willett Early Childhood Center in an integrated pre-school program with non-disabled children.  ¶ 8.  The IEP also provided for multiple services for A.B. including a one-on-one aide, Applied Behavior Analysis ("ABA")/Discrete Trial Training ("DTT"), speech-language services, oral motor and feeding services from an occupational therapist, social skills instruction, behavioral consultation services at school, home-based ABA tutoring services and a "consultation to the home program." ¶ 8.  The proposed IEP also included extended year services so that A.B. would receive services in the summer.  ¶ 8.

The Bolducs, through a letter by attorney Gavin dated February 10, 2011, fully rejected A.B.'s proposed placement and partially rejected the services proposed in the IEP.  ¶ 9.  The

---

[1] All paragraph references are to Norwood's Third Party Compl., D. 8, except where noted.

[2] Pursuant to Local Rule 5.3(a)(2), the Court uses only the initials of the minor child.

letter requested A.B.'s immediate placement in a "full day, full year, consistent and highly intensive ABA program in a therapeutic school, with peers with similar profiles, that can provide him with the intensive support and appropriate related services to meet his safety, behavioral, functional communication, functional living, and health-related needs." ¶ 9.  On March 16, 2011, attorney Gavin filed a cross-complaint and a request for a hearing before the BSEA on A.B.'s behalf.  ¶ 10.  On May 9, 2011, Norwood submitted a written offer of settlement to Gavin including an out-of-district placement and other changes to the IEP that included some increases in services to A.B.  ¶ 11.  The Parents rejected this offer.  ¶ 11.  On May 16, 2011, the BSEA Hearing Officer issued an Order clarifying his understanding of the issues in dispute and denying the Bolducs' request that the Hearing Officer consider ordering a placement at the Crossroads School ("Crossroads") and home services by Beacon Services ("Beacon").  ¶ 12.  The next day, on May 17, 2011, the Bolducs sought to amend their cross-complaint specifically to include placement at Crossroads and home services by Beacon as requested remedies.  ¶ 13.  Later that same day, the Hearing Officer denied the Bolducs' motion to amend.  ¶ 14.

The BSEA Hearing took place over five days in late May 2011.  ¶ 15.  On the first day of the Hearing, at the suggestion of the Hearing Officer, Norwood's expert witness and the Bolducs' expert witness agreed to confer and see if they could reach an agreement or compromise that they both felt would meet A.B.'s educational needs.  ¶ 16.  The experts reached an agreement that maintained A.B.'s placement at the Willett Early Childhood Center, but modified his IEP to increase his ABA/DTT program at home and at school, extend his summer program and provide for increased training and oversight of the child's service program by the experts or their designees.  ¶ 16.  Norwood agreed to accept the recommendations and proposal

put forth by the experts, but the Bolducs did not agree and opted to proceed with the Hearing. ¶ 16.

On June 7, 2011, the Hearing Officer issued a partial decision instructing Norwood "to refrain from using a hip stabilizing belt when feeding" A.B. unless and until Norwood obtained a written order from a physician for this purpose. ¶ 17. Norwood obtained the required physician's order. ¶ 17. On June 26, 2011, the Bolducs, through attorney Gavin, filed a motion to reopen the Hearing to challenge the Hearing Officer's decision related to Norwood's use of the hip stabilizing belt. ¶ 17. The Hearing Officer denied this motion. ¶ 17. On June 29, 2011, Gavin submitted the Bolducs' written closing arguments to the Hearing Officer, which again raised the issue of a placement at Crossroads and argued that Crossroads was an "undisputed" appropriate placement for A.B. ¶ 18. On July 15, 2011, the Bolducs, through attorney Gavin, filed a motion for "Compliance with the Hearing Officer's June 7, 2011 Partial Decision." ¶ 17.

On August 4, 2011 the Hearing Officer issued a 43-page final decision. ¶ 19. The Hearing Officer concluded that the IEP, as was proposed by Norwood, was not reasonably calculated to provide A.B. with a free appropriate public education and ordered that Norwood increase the proffered services to increase the ABA/DTT services at home and at school, speech-language services, home-based services, extended school year services and added certain consultative services. D. 1-2 at 38-39, 43.[3] The Hearing Officer, however, concluded that A.B.'s placement in an integrated classroom at the Willett Early Childhood Center was appropriate. D. 1-2 at 35. The Hearing Officer ordered reimbursement by Norwood to the

---

[3]The Hearing Officer's Decision, dated August 4, 2011, was attached to the Bolducs' complaint against Norwood. D. 1-2. Since the third-party complaint explicitly relies upon this Decision although it is not attached to its' pleading, the Court, in reviewing the third-party complaint, may consider the Decision without converting this Rule 12(b)(6) motion into a motion for summary judgment. Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000).

Bolducs for the cost of a "home assessment," but not for other expenses claimed by the Bolducs. D. 1-2 at 43; ¶ 20.

The Bolducs, on October 28, 2011 through new counsel, filed a complaint in this Court seeking an award of reasonable attorney's fees and costs incurred in relation to the BSEA action. D. 1 ¶¶ 12-14. On January 11, 2012, Norwood filed an answer to the complaint and asserted a counterclaim against the Bolducs and Gavin for attorney's fees and costs. D. 6 at 5-12. On January 30, 2012, Norwood filed a separate third party complaint solely against Gavin that was almost identical in wording to the earlier counterclaim.[4] D. 8.

In its third party complaint, Norwood asserts that the Bolducs "failed to obtain relief at [the] hearing that was more favorable than the relief offered by the District in settlement or proposed by the parties' experts on the first day of the [BSEA] [h]earing. Moreover, [the Bolducs'] requested relief, an out of district placement at Crossroads School, was expressly rejected by the Hearing Officer." ¶ 21. Norwood alleges that a "constant barrage of challenges [related to the District's use of hip-stabilizing belt], in the face of the Hearing Officer's clear and final decision on the matter, unnecessarily protracted this issue and caused unreasonable delay and expense in resolving the undecided issues related to [A.B.'s] placement and services." ¶ 17. Norwood also alleges that it was "forced to respond" to Gavin's June 29, 2011 filing of the Bolducs' written closing statement stating that the placement at Crossroads was "undisputed" as the appropriate placement for A.B. despite the fact that the Hearing Officer had already ruled on this issue. ¶ 18.

---

[4] Norwood asserts that the only reason it filed a third party complaint against Gavin, in addition to its counterclaim, is because the Bolducs have changed counsel since the hearing and decision before the BSEA. Def. Mem., D. 17 at 16.

5

Norwood asserts that is a "prevailing party" before the Hearing Officer. ¶ 23. Norwood also alleges that the Bolducs and Gavin "continued to litigate after the litigation had clearly become frivolous, unreasonable, or without foundation." ¶ 24. Norwood finally alleges that the Bolducs and Gavin continued to litigate in a manner designed to harass and unnecessarily delay and increase the cost of litigation. ¶ 25. For each of these reasons, Norwood seeks an award of reasonable attorney's fees and costs. ¶¶ 23-25. Gavin now moves to dismiss the third party complaint pursuant to Fed. R. Civ. P. 12(b)(6). D. 13.

### III.   Standard of Review

To resolve a motion to dismiss, the Court must determine if the well-pled facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). In other words, on the plaintiff's view of the facts, the Court should be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see Ocasio–Hernández, 640 F.3d at 12.

### IV.   Discussion

For the purposes of resolving this motion, the Court will assume without deciding that under IDEA, Norwood is a prevailing party within the meaning of 20 U.S.C. § 1415(i)(3)(B)(i). That statute permits, but does not require, an award of fees and costs where it provides:

> In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs—
>
> \* \* \*
>
> > (II) to a prevailing party who is a State educational agency or local educational agency against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation; or

> (III) to a prevailing State educational agency or local educational agency against the attorney of a parent, or against the parent, if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation.

20 U.S.C. § 1415(i)(3)(B)(i); see Maine Sch. Admin. Dist. No. 35 v. Mr. R, 321 F.3d 9, 15 (1st Cir. 2003) (citing Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 603 (2001)) (stating that "a party may be considered 'prevailing' [under IDEA] even without obtaining a favorable final judgment on all (or even the most crucial) of her claims"). Although the Hearing Officer decided that A.B.'s IEP "proposed by Norwood [was] not reasonably calculated to provide [A.B.] with a free appropriate public education in the least restrictive environment," D. 1-2 at 43, and mandated Norwood to provide additional services, D. 1-2 at 38-39, the Hearing Officer also maintained A.B.'s placement at Willett Early Childhood Center, D. 1-2 at 36. Accordingly, Norwood has at least plausibly alleged that it is a "prevailing party" and entitled to attorneys' fees under both § 1415(i)(3)(B)(i)(II) and §1415(i)(3)(B)(i)(III).[5] D. 8 ¶¶ 24-25.

### A. Norwood Has Not Plausibly Pled Sufficient Facts to Support its Claim Under 20 U.S.C. § 1415(i)(3)(B)(i)(II)

As to Norwood's claim under 20 U.S.C. § 1415(i)(3)(B)(i)(II) that Gavin "continued to litigate after the litigation had clearly become frivolous, unreasonable, or without foundation," D. 8 ¶ 24, the sum total of its factual allegations are as follows. In its complaint, Norwood states that, "through the actions of [Gavin] and her clients, Norwood was forced to defend against frivolous and protracted litigation which continued despite reasonable settlement offers and

---

[5] Norwood seems to suggest that it is entitled to an award of reasonable attorney's fees and costs solely on the basis that it was a prevailing party. D. 8 ¶ 23. The Court dismisses that claim, where the statute clearly requires educational agencies like Norwood to make a further showing as described above under 20 U.S.C. § 1415(i)(3)(B)(i)(II), (III).

attempts at resolution." D. 8 ¶ 2.  Norwood seemingly alleges that the Bolducs' rejection of Norwood's May 9, 2011 offer of settlement, D. 8 ¶ 11, the June, 26, 2011 motion to re-open, the July 15, 2011 motion for compliance pertaining to the Hearing Officer's decision on Norwood's use of a hip stabilizing belt, D. 8 ¶ 17, and the June 29, 2011 written closing arguments that identified Crossroads as the appropriate placement, D. 8 ¶ 18, together amounted to Gavin's continuation of litigation "after the litigation had clearly become frivolous, unreasonable, or without foundation." 20 U.S.C. § 1415(i)(3)(B)(i)(II).

To determine whether an attorney continued to litigate after the litigation became "frivolous, unreasonable, or without foundation," "a district court must focus on the question whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful." District of Columbia v. West, 699 F. Supp. 2d 273, 279 (D.D.C. 2010) (quoting Sullivan v. Sch. Bd. of Pinellas Cnty, 773 F.2d 1182, 1189 (11th Cir. 1985)); see R.P. v. Prescott Unified Sch. Dist., 631 F.3d 1117, 1126 (9th Cir. 2011) (finding that "so long as the plaintiffs present evidence that, if believed by the fact-finder, would entitle them to relief, the case is per se not frivolous and will not support an award of attorney's fees").

Although Norwood alleges that Gavin "protracted litigation . . . despite reasonable settlement offers and attempts at resolution," D. 8 ¶ 2, Norwood does not plausibly allege any facts to support the claim that Gavin was responsible for her clients' decision to reject Norwood's settlement offer.[6]  D. 8 ¶ 11; cf. Diaz v. Jiten Hotel Mgmt., Inc., 704 F.3d 150, 154

---

[6]Although the Court assumes for the purposes of this motion that Norwood was a prevailing party before the BSEA, if the Court ultimately determines that the Bolducs are a "prevailing party" and entitled to attorneys' fees under § 1415(i)(3)(B)(i)(I), IDEA specifically provides for a reduction of fees in instances when, "the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement [that the parents rejected]." 20

(1st Cir. 2012) (stating that "civil rights attorneys <u>already</u> have incentives to encourage their clients to take reasonable settlement offers, because they can only recover fees if their client is the 'prevailing party,' something that is not assured if they take the gamble of going to trial, not to mention the additional work and preparation that is required for taking a case to trial . . . [but attorneys' ethical duties] require the <u>client</u>, not the lawyer, to make all settlement decisions" (emphasis in original)). Accordingly, the Bolducs' rejection of Norwood's settlement offer does not plausibly support a claim that Gavin "continued to litigate after the litigation had clearly become frivolous, unreasonable, or without foundation," 20 U.S.C. § 1415(i)(3)(B)(i)(II).

Norwood further alleges that the Bolducs' motion to re-open and motion for compliance of the Hearing Officer's decision regarding Norwood's use of a hip stabilizing belt constituted "a barrage of challenges, in the face of the Hearing Officer's clear and final decision on the matter [and] unnecessarily protracted this issue." D. 8 ¶ 17. Even though these motions were ultimately denied by the Hearing Officer, without more, Norwood's allegations appear to amount to pleading that Gavin was acting as a zealous advocate in well contested litigation before the Hearing Officer. Norwood's allegations do not speak to the substance of those motions or to the merits of the arguments contained therein. Accordingly, Norwood's allegation that Gavin filed motions for compliance and to reopen the record, without more, does not state a claim that the action was "so lacking in arguable merit as to be groundless or without foundation." <u>West</u>, 699 F. Supp. 2d at 279.

---

U.S.C. § 1415(i)(3)(D)(i); <u>see</u> <u>Gary G. v. El Paso Indep. Sch. Dist.</u>, 632 F.3d 201, 210 (5th Cir. 2011) (ordering a reduction in the amount of attorney's fees awarded to a prevailing parent, as the parent had rejected a settlement agreement although it contained everything he sought except for attorneys' fees).

Norwood also alleges that the Bolducs' June 29, 2011 written closing arguments that identified Crossroads as the "undisputed" appropriate placement for A.B. "forced" Norwood "to respond by filing a statement objecting to this characterization of Crossroads and any discussion of Crossroads as an appropriate placement [because it was] determined in the Hearing Officer's May 16, 2011 and May 17, 2011 Orders [that] Parents' request for a Crossroads placement was not an appropriate issue in the hearing." D. 8 ¶ 18. The Bolducs' argument was allegedly made as part of the Bolducs' "written closing arguments to the Hearing Officer," D. 8 ¶ 18, at the close of a hearing. D. 8 ¶¶ 12-20.

This Court accepts as true, as it must for consideration of this motion, that the Bolducs' argument regarding A.B.'s placement at Crossroads was inconsistent with the Hearing Officer's earlier decision. But this request is alleged to have come as part of the Bolducs' closing argument made to the Hearing Officer before his final decision about the appropriateness of A.B.'s IEP and his placement at Willett Early Childhood Center. D. 8 ¶¶ 18-19. Norwood does not plausibly allege how Gavin's statement amounted to a <u>continuation</u> of litigation "after the litigation clearly became frivolous, unreasonable, or without foundation," where the written closing arguments were filed on June 29, 2011, D. 8 ¶ 18, a month after the Hearing and over a month before the Hearing Officer issued his final decision on the matter on August 4, 2011, D. 8 ¶ 19. Furthermore, even drawing every interference in favor of Norwood, the Court notes that the alleged conduct is far less egregious than was present in the rare instances in which courts have found an attorney's action to be "so lacking in arguable merit as to be groundless or without foundation." <u>See e.g.</u>, <u>Amherst Exempted Vill. Sch. Dist. Bd. of Educ. v. Calabrese</u>, No. 1:07-cv-920, 2008 WL 2810244, at *14 (N.D. Ohio July 21, 2008) (awarding attorney's fees to a school district where plaintiff's attorney "showed dubious judgment at every stage of the

10

administrative action," where the attorney "did not challenge any procedure that [the School] offered [the student] and failed to offer any evidence beyond [the parent's] unsupported opinion," and, further demanded a review of the hearing officer's decision despite "offering no challenge to any of [the School's] procedures [and] failing to challenge a single factual finding in the hearing officer's decision"). Where Norwood does not allege facts that could plausibly show that Gavin "continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation," Norwood's claim for attorneys' fees under § 1415(i)(3)(B)(i)(II) must fail.[7]

### B. Norwood Has Not Plausibly Pled Sufficient Facts to Support its Claim Under 20 U.S.C. § 1415(i)(3)(B)(i)(III)

In support of its claim under 20 U.S.C.§ 1415(i)(3)(B)(i)(III), Norwood alleges that Gavin "continued to litigate in a manner designed to harass and unnecessarily delay and increase the cost of litigation." D. 8 ¶ 25. However, as Gavin notes, D. 14 at 16, to obtain relief under § 1415(i)(3)(B)(i)(III) Norwood must prove that "the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation." 20 U.S.C. § 1415(i)(3)(B)(i)(III) (emphasis added). Accordingly, as Norwood neither alleges a set of facts related to the Bolducs' motivation in presenting their complaint nor alleges how any subsequent litigation conduct bears upon same, Norwood's claim for attorney's fees under § 1415(i)(3)(B)(i)(III) must fail.[8]  See I.S. ex rel.

---

[7] Although 20 U.S.C. § 1415(i)(3)(B)(i)(II) also provides for fees against an attorney "who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation," Norwood makes no such allegation against Gavin.

[8] Gavin further argues that "if this Court allows [Norwood's] Third Party Complaint [to proceed], a chilling effect would occur among special education attorneys who advocate for children" as "all attorneys who share similar practices [to Gavin's] would have to balance their professional responsibility to advocate on behalf of disabled children with the fear of being found personally liable for any result that is short of complete success." D. 14 at 18-19. The Court recognizes this concern, but also recognizes that "[w]hen a school district must spend

Sepiol v. Sch. Town of Munster, 2:11-cv-160-JD, 2012 WL 928880, at *5 (N.D. Ind. Mar. 19, 2012) (finding that "there is nothing ambiguous about the statutory language. . . . [since] [f]ee-shifting [under this subsection] is only authorized if the Parents' 'complaint or subsequent cause of action' was frivolous and improper," but whether the litigant has engaged in other "apparent litigation misconduct" may bear on the plausibility of the allegation that the complaint or subsequent cause of action was frivolous and improper).

V.    **Conclusion**

For the above reasons, Gavin's motion to dismiss, D. 13, is GRANTED on all counts.

**So Ordered.**

/s/ Denise J. Casper  
United States District Judge

---

money to defend against frivolous cases, it drains funds away from needed services for other disabled children." 150 Cong. Rec. S5250-02, 2004 WL 1066472 (May 12, 2004) (statement of Sen. Charles Grassley). The Court acknowledges the merits of both concerns but, as discussed above, rests its analysis, as it must, on the Fed. R. Civ. P. 12(b)(6) standard for stating a plausible claim.